FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 16 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
DODGE HYUNDAI OF PARAMUS and HYUNDAI OF PARAMUS, L.L.C.,

                Plaintiffs,

  -against-

UNITED WELFARE FUND, WELFARE DIVISION, and UNITED WELFARE FUND, SECURITY DIVISION,

                Defendants.
------------------------------------------------------------------- X

11-CV-979 (ARR)

OPINION AND ORDER

ROSS, United States District Judge:

In the instant action, defendants, United Welfare Fund, Welfare Division, and United Welfare Fund, Security Division, filed a notice of intention to initiate arbitration to resolve allegations that plaintiff employers Dodge Hyundai of Paramus and Hyundai of Paramus, LLC, failed to make full and timely benefit fund contributions on behalf of employees covered by the Collective Bargaining Agreement ("CBA") between plaintiffs and the Local 355, United Service Workers Union, IUJAT ("Union"). Plaintiffs petitioned for a stay of arbitration in the Supreme Court of the State of New York, Queens County pursuant to NY C.P.L.R. 7503(b). Defendants removed plaintiffs' action to the Eastern District of New York and now move for an order dismissing the complaint and directing the parties to proceed to arbitration. For the reasons set forth below, defendants' motion to dismiss plaintiffs' petition and compel arbitration is granted.

## BACKGROUND

I.    <u>The Parties</u>

The United Welfare Fund, Welfare Division, and United Welfare Fund, Security Division

1

(the "Funds") are "employee benefit fund[s]" as defined in Section 2 of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1002. The Funds are operated pursuant to an Agreement and Declaration of Trust between the Union, all employers party to the agreement, and the board of trustees. Decl. of Zachary R. Harkin, May 13, 2011 ¶ 2, Ex. A ("Trust Agreement"). Plaintiffs Dodge Hyundai of Paramus and Hyundai of Paramus, L.L.C. ("Dodge Hyundai") are employers party to a collective bargaining agreement with the Local Union No. 355. Notice of Removal, Ex. B ("CBA").

II.     The CBA and Trust Agreement

Dodge Hyundai is a signatory to a collective bargaining agreement between Dodge Hyundai and the Local Union No. 355, a non-party to this lawsuit. Pursuant to the CBA, Dodge Hyundai agrees to make monthly fringe benefit contributions to the Funds on behalf of each employee covered by the agreement. CBA, arts. XXIV, XXV.

The CBA also provides for certain mandatory grievance procedures for disputes between the parties. The CBA requires that "all disputes, complaints, controversies, claims and grievances arising between the Employer and the Union, or any employees covered by this Agreement, concerning the interpretation, and application of this Agreement" be submitted to arbitration and the decision final. CBA, art. XXII § 1. The same provision explains some of the procedural requirements: "The Grievance shall first be taken up between representative of the Union and the Employer within ten (10) working days after such dispute has arisen. If the said dispute shall not be adjusted within five (5) working days thereafter, then the matter shall be submitted to arbitration within ten (10) working days by either party . . . ." Id.

Articles XXIV and XXV of the CBA detail Dodge Hyundai's contribution requirements to the defendant employee benefit funds. Article XXIV requires Dodge Hyundai to contribute

2

monthly to the United Welfare Fund for "each employee covered by [the CBA.]" CBA, art. XXIV § 1(a). Article XXV requires monthly contributions to the Security Fund of the United Service Workers Union to "each full time employee actively at work covered by this agreement." CBA, art. XXV § 1(a).

The CBA also incorporates the United Welfare Fund's Trust Agreement and binds Dodge Hyundai to its terms: "Employer agrees that the Trust Agreement establishing the United Welfare Fund shall be deemed to be as though fully set forth herein and the terms thereof shall bind the Employer as if it were a signatory to the Agreement of Trust made and establishing the United Welfare Fund." CBA, art. XXIV §1(d).[1]

The Trust Agreement itself also provides for the resolution of certain disputes.[2] Specifically, the Trust Agreement, as amended in March 2007, provides that, "[i]n addition to any other remedies to which the Fund may be entitled including those under Section 502(g) of ERISA . . . the Board of Trustees, or the [Administrative Committee of the Board of Trustees] may take any action necessary to enforce payment of the contribution obligations due and additional amounts provided for hereunder, including but not limited to a submission to arbitration, or the initiation or the intervention in, legal proceedings as the Trustees or the Committee in their sole discretion determine to be appropriate." Trust Agreement, art. X § 1. The same provision states further that by "participating in the Fund, the Employer agrees to be bound by the provisions of this Article and any rules effectuating the process hereinabove contemplated." Id.

III.   The Instant Action

---

[1] Article XXV, Section 1(c) of the CBA provides identical language incorporating the Trust Agreement with respect to the United Service Workers Security Fund.
[2] The court may properly consider the Trust Agreement at the motion to dismiss stage, even though it was not attached to the complaint, because it is incorporated by reference in plaintiffs' verified petition. See V. Pet., ¶¶ 4,5; Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

According to the Funds, the instant dispute arose out of Dodge Hyundai's alleged failure to remit fringe benefit contributions to a certain group of service and parts employees that transferred from another automobile dealership to plaintiffs' dealership in November of 2010. Defs.' Mem. In Supp. of Mot. to Dismiss at 2. On January 6, 2011, the defendant funds served Dodge Hyundai with a Twenty Day Notice of Intention to Conduct Arbitration alleging plaintiffs' failure to make "full and timely Fund contributions on behalf of employees covered by the Collective Bargaining agreement" and seeking the principle, interest, liquidated damages and attorney's fees. V. Pet., ¶ 5. On February 1, 2011, Dodge Hyundai commenced the instant action by filing a Notice of Petition and Verified Petition to Stay Arbitration in the Supreme Court of the State of New York, Queens County. Id. Defendants subsequently removed the action to this court on April 6, 2011 on the basis of federal question jurisdiction under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C § 1002. Notice of Removal, ¶ 6.

The defendant Funds now move for an order dismissing the complaint pursuant to Rule 12(b)(6) and directing the parties to proceed to arbitration. The Funds argue (1) that the terms of the CBA and the Trust Agreement establishing the funds incorporated therein evidence an agreement to arbitrate between the parties and (2) that the instant dispute falls within the scope of the arbitration agreement. Plaintiffs argue that that there is no agreement to arbitrate between the between Dodge Hyundai and the Funds, and that the CBA only requires arbitration for disputes between Dodge Hyundai and the Union. In the alternative, Dodge Hyundai argues that even if there were an agreement to arbitrate between the parties, the dispute is non-arbitrable because it concerns the makeup of the bargaining unit to the CBA. Finally, Dodge Hyundai argues that defendants' claims are non-arbitrable because any potential award by the arbitrator would be in

violation of New Jersey Law.

## DISCUSSION

I. <u>Legal Standard</u>

In deciding a defendant's motion to dismiss, "the court must accept as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." <u>Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.</u>, 128 F.3d 59, 63 (2d Cir. 1997). The central question is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

When determining the sufficiency of a plaintiff's claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in a plaintiff's complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference, and to matters of which judicial notice may be taken. See <u>Roth v. Jennings</u>, 489 F.3d 499, 509 (2d Cir. 2007); <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002). "In addition, even if not attached or incorporated by reference, a document upon which [the complaint] solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion." <u>Roth</u>, 489 F.3d at 509 (internal quotation marks and citations omitted; alteration in original).

II. <u>Arbitrability</u>

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>AT&T Techs., Inc. v. Commc'ns Workers of America</u>, 475 U.S. 643, 648 (1986). In deciding arbitrability, "a court is not to rule on the potential merits of the underlying claims." <u>Id.</u> at 649. On a motion to compel arbitration, the moving party has the initial burden of showing that an agreement to arbitrate exists. <u>Nederlands Erts-Tankersmaatschappij, N.V. v. Ibrandtsen Co., Inc.</u>, 339 F.2d 440, 442 (2d Cir.

1964). A court must first determine whether there is a valid agreement to arbitrate between the parties. If there is, the court must then determine whether the particular dispute falls within the scope of arbitration clause. Unique Woodworking, Inc., v. New York City Dist. Council of Carpenters' Pension Fund, No. 07-Civ-1951 (WCC), 2007 U.S. Dist. LEXIS 88342 at *10 (S.D.N.Y. Nov. 30, 2007). If the dispute falls within the scope of the arbitration clause, the "role of the court ends and the matter is one for arbitration." Id.

*A. Agreement to Arbitrate*

In seeking to compel arbitration, the Funds argue that the CBA and the Trust Agreement, taken together, evidence an agreement to arbitrate between the parties. Dodge Hyundai argues that it only agreed in the CBA to arbitrate disputes with the Union, not the Benefit Funds, who are merely third-party beneficiaries. The Funds therefore may not "stand in the shoes" of the Union and enforce the CBA's arbitration clause. While the court finds that the CBA itself does not confer a right to compel arbitration on the Funds because they are non-parties, the court finds that the terms of the Trust Agreement to which both parties in the instant action are bound—and which Dodge Hyundai does not address—evidences a clear and unambiguous agreement to arbitrate delinquent contribution disputes.

For disputes arising out collective bargaining agreements where there is an arbitration clause, there is a presumption of arbitrability. See United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960) ("An order to arbitrate the particular grievance should not be denied unless it can be said with positive assurances that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."). In Schneider Moving & Storage Co. v. Robbins, however, the Supreme Court held that this presumption does not apply to disputes between employee benefit funds and employers, "even if those disputes raise

questions of interpretation under the collective-bargaining agreements." 466 U.S. 364, 372 (1984). In Schneider, the Court noted the strong policy preference for arbitrability in disputes between unions and employers because the alternative of arbitration "requires parties to forgo the economic weapons of strikes and lockouts." Id. In disputes between benefit funds and employers where neither party can resort to these economic weapons, the Court found the preference for arbitration less compelling. Id. Moreover, the Court noted that multi-employer benefit funds, if subject to the mandatory arbitration provisions of every collective bargaining agreement entered into by their constituent unions, would be compelled to bear the costs of lengthy arbitration processes at the expense of other beneficiaries. Id. at 373-74. Because this case involves a dispute between an employer and a benefit fund, the court cannot presume arbitrability. In the absence of the presumption, the court must instead examine the language of the collective bargaining agreement and the trust agreement and determine whether there is an agreement by the parties to submit to arbitration. O'Hare v. General Marine Transport Corp., 740 F.2d 160, 168 (2d Cir. 1984); MI Installers v. New York City Carpenters Pension, 476 F. Supp. 2d 387, 391 (S.D.N.Y. 2007).

    i. The CBA

Employers and fringe benefit funds are not bound by arbitration clauses in collective bargaining agreements to which the funds are not party, absent a manifestation of intent to the contrary. See e.g., Schneider, 466 U.S. at 367 (declining to compel arbitration where benefit fund was third party to collective bargaining agreement and no provision to the contrary indicated agreement to arbitrate between employer and fund); O'Hare, 740 F.2d at 168 (collective bargaining agreement's arbitration does not apply to fund trustees, where agreement only referenced employer and unions); MI Installers, 476 F. Supp. 2d at 394; Local 8A-28A

7

Welfare and 401(k) Ret. Funds v. Millard Group, Inc., No. 03-CIV-8672, 2004 U.S. Dist. LEXIS 2288, at *7 (S.D.N.Y. Feb. 18, 2004); Local 8A-28A Welfare and 401(k) Ret. Funds v. Golden Eagles Architectural Metal Cleaning & Refinishing, 277 F. Supp. 2d 291, 296-97 (S.D.N.Y. 2003).

Article XXII of the CBA, to which only Dodge Hyundai and the Union are signatories, requires arbitration for "all disputes . . . arising between the *Employer* and the *Union*, or any *employees covered by this Agreement*." (emphasis added). The same Article XXII specifies the grievance procedure and notes that "*either* party" may submit a dispute to arbitration after a certain period of time. (emphasis added). As in Scheider and its progeny, the court reads the plain language of these provisions to limit the mandatory arbitration requirement to the parties explicitly referenced in the agreement: the Employer and the Union. See MI Installers, 476 F. Supp. 2d at 392 (holding that arbitration language referring specifically to the parties to a collective bargaining agreement binds only those parties and not employee benefit funds). The Funds, as third-party beneficiaries, without the Schneider presumption of arbitration for disputes arising under a collective bargaining agreement, may not simply "step into the shoes" of the Union and enforce that agreement's provisions. Id. at 393-94.[3] The court finds that the CBA

---

[3] For the first time in their reply brief, the Funds raise the argument that a separate provision of the Trust Agreement, not referenced in their motion to dismiss, does permit the Funds to "stand in the shoes" of the Union and enforce the broad arbitration clause of the CBA: "In addition to any remedies which the Union may have by virtue of any provisions in any Collective Bargaining Agreement with the employer to enforce the payment of the employer contributions to the Fund, the Trustees shall have the power to require any employer who does not make proper and timely contributions as required by its Collective Bargaining Agreement to pay in addition to such contribution . . . ." Trust Agreement, art. III § 13. The court need not consider an argument first raised in reply. ABN Amro Verzekeringen BV v. Geologistics Ams., Inc., 485 F.3d 85, 97 n.12 (2d Cir. 2007). In any event, whether the first clause of the provision actually confers any affirmative rights to the Trustees, or merely states that enforcement may be initiated either by the Union and the Trustees pursuant to the procedures available to each respectively, is at best ambiguous. The rest of the cited provision outlines what additional monetary awards the Trustees could seek beyond the principle of the benefit contributions (e.g. interest, attorney's fees, and audit expenses). This would be a peculiar place to empower the Funds with all of the procedural powers of the Union, including mandatory arbitration. At the motion to dismiss stage, the court finds that this provision does not evidence an agreement to arbitrate under the CBA's broad arbitration clause.

itself therefore does not evidence any agreement to arbitrate between the Dodge Hyundai and the Benefit Funds.

ii. The Trust Agreement

The Funds argue that, not only the CBA, but the terms of the Trust Agreement, which is expressly incorporated by the CBA, provides the source of the parties' agreement to arbitrate. Specifically, the Trust Agreement provides that the Board of Trustees or the Administrative Committee "may take any action necessary to enforce the payment of the contribution obligations due and additional amounts . . . including but not limited to a submission to arbitration, or the initiation or the intervention in, legal proceedings as the Trustees or the Committee in their sole discretion determine to be appropriate." Trust Agreement, art. X § 1.[4]

The majority of cases involving similar trust agreement provisions involve the opposite posture: where benefit funds are resisting arbitration proceedings initiated by employers. See MI Installers, 476 F.Supp.2d at 391 (collecting cases). When reviewing analogous agreements in that context, courts have ruled against compelling arbitration on the grounds that the trust agreements permitting funds to initiate arbitration proceedings did not bind the *funds* to mandatory arbitration initiated by the employers. See Div. 1181 Amalgamated Transit Union's New York Emps. Pension Fund v. Minibus Svc., Inc., No. 08-CV-2910(CPS)(MDG), 2009 U.S. Dist. LEXIS 17695 at *11-12 (E.D.N.Y. March 9, 2009); Golden Eagles, 277 F. Supp. 2d at 296-97; Millard., 2004 U.S. Dist. LEXIS 2288, at *7-8. In holding that the funds were not *required* to arbitrate, however, these courts took care to imply that the funds are empowered with the discretion to initiate arbitration if they so choose. See Minibus, 2009 U.S. Dist. LEXIS 17596, at *12 ("Where a trust agreement empowers trustees with the discretion to choose between

---

[4] Dodge Hyundai does not dispute that they are party to the Trust Agreement. CBA, art. XXIV § 1(d) ("The Trust Agreement "bind[s] the Employer as if it were a signatory to the Agreement of Trust made and establishing the United Welfare Fund.").

9

arbitration and instituting a lawsuit in order to enforce a fund's rights against an employer, the agreement does not 'require' the trustees to arbitrate with the employer."); Millard, 2004 U.S. Dist. LEXIS 2288, at *8 (holding that where a provision in the trust agreement gives authority to trustees to proceed by lawsuit or arbitration, "trustees may exercise their discretion to choose the appropriate means to enforce [the employer's] obligations"). Where benefit funds, not employers, initiate arbitration when it is committed to their discretion in a trust agreement, the employer is bound to submit to the arbitration proceeding. See Burgess Steel Prods. Corp. v. Iron Workers Locals 40, 361 & 471 Union Sec. Funds, 1999 U.S. Dist. LEXIS 15524, at *25 (D. N.J. Oct 4, 1999) (compelling arbitration where similar provisions evidenced an unambiguous agreement permitting the benefit fund to institute arbitration).

This distinction makes sense. In holding that the strong presumption of arbitrability of labor disputes did not apply to suits by multi-employer benefit funds, the Supreme Court in Schneider recognized the costs to other beneficiaries if the funds were forced to submit to the grievance procedures of each employer's unique collective bargaining agreement. Schneider, 466 U.S. at 373 ("The enforcement mechanisms established in the trust agreements protect the collective interests of the parties from the delinquency of individual employers by allowing the trustees to seek prompt judicial enforcement of the contribution requirements."). Here, the funds seek to enforce an arbitration clause in their trust agreement that binds all employers party to that agreement, because they deem it the most efficient mechanism to ensure the prompt resolution of delinquent benefits. Because the Funds act in a fiduciary role, there is little concern of prejudice to other beneficiaries and less reason to disfavor arbitration.

In their response, plaintiffs cite MI Installers and Furniture, Inc. v. New York City Dist. Council of Carpenters Pension Fund, in which the district court held that the employee benefit

funds could not initiate arbitration to collect delinquent contributions from the employers. 476 F. Supp. 2d 387 (S.D.N.Y. 2007). The agreements here are distinguishable. The court in MI Installers found no provision in any agreement permitting the trustees of the benefit funds to initiate arbitration. In fact, the court took notice that the agreements affirmatively provided the trustees with the right "to institute formal proceedings before a court of competent jurisdiction to collect delinquent contributions." Id. at 392 (internal quotations omitted). Reasoning that this provision indicated the parties "were well-aware of how they wanted Trustees to proceed if a contribution dispute arose," the court inferred a deliberate choice by the parties not to include the option of arbitration. Id. Here, the Trust Agreement explicitly grants the Funds the right to initiate arbitration proceedings to collect delinquent contributions. See New York City District Council of Carpenters Pension Fund v. TADCO Constr. Corp., No. 07-Civ-2712 (HB), 2008 U.S. Dist. LEXIS 14635, at *23-24 (S.D.N.Y. Feb. 28, 2008) (distinguishing MI Installers where dispute concerned right to audit, and trust agreement "clearly required the Funds to arbitrate their claims for books and records"). Moreover, there is no language in either agreement granting the Funds some enforcement rights, but withholding arbitration.

The court finds that Article X, Section 1, of Trust Agreement evidences a clear and unambiguous agreement between the parties that the Funds may initiate arbitration to enforce the payment of delinquent contributions.

    B.    *Arbitrability of the Funds' Claims*

Dodge Hyundai argues next that the instant dispute falls outside the scope of any agreement to arbitrate. The Funds allege the dispute arises from Dodge Hyundai's non-payment of benefit contributions on behalf of certain employees transferred from a different car dealership in November 2010, and therefore involves the enforcement of payment for delinquent

contributions, a dispute within the scope of the agreement to arbitrate. Dodge Hyundai asserts that the Funds' notice of intention to arbitrate and subsequent pleadings have mischaracterized the nature of the dispute. While the Funds characterized the dispute as one involving delinquent benefits, Dodge Hyundai views the "true dispute" as over the make-up of the bargaining unit— i.e. the employees the Funds are seeking benefits on behalf of are not part of the bargaining unit covered by the CBA. See V. Pet., ¶ 9. Dodge Hyundai's petition asserts that Dodge Hyundai and the Union are in the process of negotiating the scope of the bargaining unit, and that the bargaining table is the appropriate forum for such a dispute. Id. Therefore, plaintiff argues, the dispute is outside the scope of any agreement to arbitrate between the Funds and Dodge Hyundai. The court disagrees and finds that the instant dispute is within the scope of the parties' agreement to arbitrate.

Once the court finds an agreement to arbitrate, the court's role is limited to determining whether the dispute at issue falls within the scope of the agreement. Unique Woodworking, 2007 U.S. Dist. LEXIS 88342, at *10. Generally, federal courts have favored arbitrability whenever parties have contractually provided for arbitration. Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 63 (2d Cir. 1983) (citing Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11 (1974)). Therefore, in cases of doubt, courts should resolve them in favor of arbitration. Shaw Group Inc. v. Triplefine Int'l Corp, 322 F.3d 115, 120 (2d Cir. 2003) (citing Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). When deciding whether a dispute falls within the scope of the agreement to arbitrate, a court should first determine whether the arbitration clause is "broad" or "narrow." Louis Dreyfus Negoce S.A. v. Bylstad Shipping & Trading, Inc., 252 F.3d 218, 224 (2d Cir. 2001). If the clause is "broad," a court generally should compel arbitration and permit the arbitrator to decide whether the dispute

falls within the arbitration clause. Prudential Lines, 604 F.2d at 64; see also Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 121 (2d Cir. 1991) ("[W]hen the contract contains a 'broad' arbitration clause . . . the strong presumption in favor of arbitrability applies with even greater force."). If the clause is "narrow," the court must not compel arbitration unless the court first determines "whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." Louis Dreyfus Negoce S.A., 252 F.3d at 224 (internal quotation marks and citations omitted).

As noted above, the arbitration clause in the Trust Agreement covers enforcement actions initiated by the Funds, for "the payment of the contribution obligations due and additional amounts." Trust Agreement, art. X § 1.[5] This clause is relatively narrow, as it does not cover all disputes arising between the parties, or even all disputes that arise under the agreements between the parties, but only enforcement actions for recovering delinquent contributions. Compare Mehler v. Terminix Int'l Co., 205 F.3d 44, 49 (2d Cir. 2000) (arbitration clause applying to "any controversy or claim between [the parties] arising out of or relating to" the agreement is broad) with Rochdale Vill., Inc. v. Pub. Serv. Emps. Union, Local No. 80, 605 F.2d 1290, 1296 (2d Cir. 1979) (use of "hereunder" in arbitration clause covering all grievances between the parties limited arbitration to matters arising out of, but not collateral to, the agreement). Even taking a narrow view of the arbitration clause, however, the court finds the instant dispute squarely within

---

[5] The Funds also urge the court, without explanation, to consider the breadth of the CBA's arbitration clause. Defendant Funds appear to be arguing that because Article X, Section 1, of the Trust Agreement authorizes the trustees to pursue arbitration to recover delinquent contributions, this automatically permits the Funds to take advantage of the broader arbitration clause, regarding "all disputes," in the CBA. The Funds' argument is belied by the limiting language of Article X, Section 1, of the Trust Agreement which covers only enforcement for the payment of delinquent benefits. Had the parties meant to confer on the Funds all procedural rights available to the parties of the CBA, they might have used more expansive language or referenced the individual collective bargaining agreements directly. The Trust Agreement evidences no intent to make all remedies available to the Funds that are available to the parties to the CBA.

its purview.

The Funds' Notice of Intention to Conduct Arbitration states that the "Employer has failed to make full and timely Fund contributions on behalf of employees covered by the Collective Bargaining Agreement with the Union" and seeks award of delinquent payments. V. Pet. ¶ 5. On its face then, the Funds' initiated action fits precisely within the agreement to arbitrate. The Funds allege that since November 2010, certain employees have not received benefits owed to them under Articles XXIV and XXV of the CBA, and therefore Dodge Hyundai contributions are delinquent. Dodge Hyundai's argument that the dispute actually concerns the scope of the bargaining unit requires the court to consider the merits of the case. See AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986) (when deciding arbitrability, "a court is not to rule on the potential merits of the underlying claims"). Whether employees are covered by the CBA, and therefore entitled to contributions by Dodge Hyundai on their behalf, may very well determine if Dodge Hyundai's contributions are indeed delinquent. Whether the employer is delinquent is precisely the kind of dispute the parties agreed to arbitrate. Why the employer may or may not be delinquent—e.g. because the employer has failed to give contributions to certain employees covered by the agreement, or simply because employer has not remitted the required payments—is a matter to be decided by the arbitrator.

Accepting its characterization of the instant case, Dodge Hyundai cites no authority that a dispute may not be submitted to arbitration if resolution requires a determination of the scope of the bargaining unit. Indeed, courts have frequently compelled arbitration where resolution may involve the scope of the bargaining unit, or other representational issues. See Carey v. General Electric Company, 315 F.2d 499, 507-08 (2d Cir. 1963) (compelling arbitration even where arbitration may result in determination of the "appropriate classification of any employee");

14

Unique Woodworking, Inc., 2007 U.S. Dist. LEXIS 88342 at *14-15 (compelling arbitration even where employer argued that work was performed outside jurisdictional limits of the collective bargaining agreement and by non-union members); Community Hosp. v. 1115 Nursing & Hospital Employees Union, No. CV-90-0391, 1990 U.S. Dist. LEXIS 13340 at *9 (E.D.N.Y. Mar. 13, 1990) (denying motion to stay arbitration where dispute may involve representational issue of whether union could add additional categories of employees); see also Intern. Ass'n of Machinists & Aerospace Workers, AFL-CIO (Local 2201) v. Intern. Air Serv., 636 F.2d 848, 849 (1st Cir. 1980) (holding that "the question of whether or not employees in question came within the definition of the bargaining unit was for the arbitrator to decide as arbitration" and could at least clear up the "factual and contractual underbrush" even if ultimate determination of the bargaining unit is made by the NLRB). This court finds no reason why an arbitrator cannot properly determine whether Dodge Hyundai failed to remit benefits on behalf of certain employees, even if it requires an interpretation of the CBA.[6]

Dodge Hyundai argues finally that the Funds' claim is not arbitrable on the grounds that any award via arbitration requiring plaintiffs to make contributions to defendants would compel them to make deductions and/or contributions to the Funds on behalf of employees without their authorization in contravention of New Jersey labor law. N.J. Stat. Ann. § 34:11-4.4. First, this argument also goes to the merits of the dispute, which should be addressed to the arbitrator and cannot properly be considered by this court. See AT&T Techs., 475 U.S. at 649. Further, at this stage it is unknown what relief, if any, an arbitrator might grant the Funds. It would be

---

[6] There is also no indication that the instant dispute will inevitably require determination of the scope of the bargaining unit. On its face, the dispute concerns enforcement for payment of delinquent benefit contributions. The arbitrator may decide the benefits are delinquent or inadequate for myriad reasons, including whether the employees are covered under the CBA. To the extent the arbitrator fashions a decision or remedy in abuse of the arbitrator's authority as established in the Trust Agreement, Dodge Hyundai may come to federal court to vacate the award.

premature for this court to speculate whether the arbitrator's hypothetical relief would violate state or federal law. If the arbitrator grants relief that is contrary to law or an abuse of authority, plaintiff is free to come to federal court and seek to vacate the award.

Having found an agreement to arbitrate between the parties, and the instant dispute within the scope of this agreement, the court grants the funds motion to dismiss plaintiffs' petition and compel arbitration.

III. Attorney's Fees

In its motion to dismiss, the Funds also request attorney's fees, costs and disbursements in connection with the defense of this action. Because the court finds that plaintiffs did not act in bad faith or raise arguments so meritless as to call for the imposition of attorney's fees, this request is denied. See First Nat. Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps., 118 F.3d 892, 898 (2d Cir. 1997).

## CONCLUSION

Because the Trust Agreement incorporated by the Collective Bargaining Agreement evidences a clear agreement to arbitrate between the parties, and the dispute in question falls within the scope of this agreement, the court holds that plaintiffs' petition to stay arbitration is unfounded. Accordingly, defendants' motion to dismiss plaintiffs' petition and compel arbitration is granted. Defendants' request for attorney's fees is denied. The Clerk of the Court is instructed to enter judgment accordingly.

SO ORDERED.

/s/(ARR)

_____
Allyne R. Ross
United States District Judge

Dated:   September 15, 2011
         Brooklyn, New York